**L. T. ZOBY, trading as L. T. Zoby and Sons, Plaintiff,**

v.

**AMERICAN FIDELITY COMPANY, a foreign corporation, Defendant.**

**Civ. A. No. 1858.**

United States District Court
E. D. Virginia, Norfolk Division.
Dec. 28, 1955.

awarded a contract by the United States Government (hereinafter referred to as the Navy) for the construction of a steam generator plant at the Naval Air Station, Oceana, Virginia. The named defendant, together with the New Hampshire Fire Insurance Company, executed as surety the customary payment and performance bond. Regent defaulted and the Navy called upon the surety. The matter was referred by the bonding company to one Alexander M. Heron, an attorney representing the American Fidelity Company and New Hampshire Fire Insurance Company (hereinafter respectively referred to as American and New Hampshire). The present status of the case turns on defendant's motion for summary judgment and plaintiff's motion to file an amended complaint alleging wrongful interference on the part of Heron (as agent for American and New Hampshire) and seeking to make New Hampshire and Heron parties defendant. Plaintiff resists the motion for summary judgment and defendant has interposed a timely objection to plaintiff's motion to amend in which plaintiff seeks to name additional parties defendant and, in effect, while not abandoning the cause of action on contract, now alleges a cause of action sounding in tort for wrongful interference with plaintiff's entering into the contract with the Navy. Plaintiff's motion was filed on September 7, 1955—one week prior to the oral argument on the motion for summary judgment—and more than one year following the date the cause of action arose on or about August 20, 1954.

P. A. Agelasto, Jr., Frederick T. Stant, Jr., Norfolk, Va., for plaintiff.

Vandeventer, Black & Meredith, Norfolk, Va., Barron F. Black, Norfolk, Va., for defendant.

Certain discovery depositions and exhibits were filed with the Court and, pursuant to statements of counsel, are to be considered for the purpose of aiding the Court in arriving at its conclusions.

HOFFMAN, District Judge.

On October 8, 1954, plaintiff instituted this action against the defendant, American Fidelity Company, seeking damages for the breach of an alleged contract. The Regent Contracting Company, Inc. (hereinafter called Regent), had been

As to the original complaint and such portion of the amended complaint as alleges a binding contract with American, Heron, or New Hampshire, it is clear that the motion for summary judgment must be granted. It is a fundamental rule of law in Virginia that a

plaintiff's case can rise no higher than is shown by his own testimony when the facts are within his knowledge. Massie v. Firmstone, 134 Va. 450, 114 S.E. 652; South Hill Motor Co. v. Gordon, 172 Va. 193, 200 S.E. 637; Chappell v. White, 182 Va. 625, 29 S.E.2d 858. While the sixth paragraph of the amended complaint alleges in substance that American and New Hampshire, acting through Heron, agreed with the Navy that work on the defaulted contract would be completed by a contractor chosen by American and New Hampshire, the evidence conclusively establishes that the contractual obligation was to be entered into by the Navy and not by the bonding companies. Plaintiff testified in discovery proceedings long prior to the filing of his motion to file an amended complaint. He is now bound by his admissions which clearly reveal that, irrespective of Heron's statements, plaintiff knew his contractual obligations would be with the Navy.

Plaintiff responded to an invitation for bids to complete the work of Regent and, on August 18, 1954, submitted a bid in the sum of $268,783, which bid, at the time, appeared to be low. Heron obviously intimated that plaintiff was to be "given the job" and plaintiff immediately proceeded to place a watchman in charge, as well as to enter into certain other preliminaries, all of which would have been required if plaintiff had entered into a binding contract. The difficulty with plaintiff's position is that he expressly concedes that Heron had previously advised him the Navy would be the sole contracting party. There is no suggestion that Heron was authorized by the Navy to close any contract, and the testimony points out that the Navy would consider the ability of the contractor, the time limit allocated for performance, the necessary payment and performance bond, and other factors, before entering into a contract with plaintiff or any other contractor.

There is evidence that, after Heron's suggestion that plaintiff "had the job", another contractor submitted a bid which was apparently less than plaintiff's bid. It is not essential to consider this phase of the case in light of the Court's views expressed herein. It is sufficient to state that plaintiff thereafter proposed a $5,000 reduction in his bid, and later made a flat bid of $258,000. Defendant urges that the submission of the lower bids was tantamount to a withdrawal of the highest bid. If there was no meeting of the minds between the contracting parties, that is, those parties who were intended to be such, then the subsequent offers to reduce the bids become immaterial, although they do tend to confirm plaintiff's understanding that the highest bid had not been accepted. Between the time plaintiff volunteered to reduce his bid by $5,000, Heron recommended to the Navy that the bid of Coe Construction Company in the sum of $261,000 be accepted, and the Navy proceeded accordingly.

■ Irrespective of the representations of Heron and the "contended" unethical practices, the alleged contract was never entered into. Plaintiff's right to proceed on his claim for a breach of contract must stop at this stage of the proceedings. Without a valid contract there can be no breach thereof. This principle does not, however, preclude plaintiff's right to establish with sufficient clearness that, but for the alleged wrongful interference of Heron, the Navy would have entered into the contract with plaintiff. This brings into focus the plaintiff's motion to proceed on this latter ground, the right to add New Hampshire and Heron as parties defendant, and the pertinent question of the statute of limitations.

■ By letter dated August 18, 1954, Heron recommended to the Navy that plaintiff be awarded the contract in the sum of $268,783. The letter was signed by Heron as "attorney for American Fidelity Co. and *Manchester* Fire Insurance Co." Actually there is no such company as "Manchester Fire Insurance Co."; the error being explained as that of the typist in view of the fact that New Hamp-

shire's home office is in Manchester, New Hampshire. The answer of American to the original complaint alleges that this defendant assumed one-eighth of the risk on the Regent bond—obviously the remaining seven-eighths must have been assumed by other companies. Defendant contends that plaintiff has failed to use due diligence in ascertaining the interest of New Hampshire and, in the exercise of the Court's discretion, permission to amend should not now be granted. Disagreeing with defendant, the Court does not believe that permission to amend should be denied. It is apparent that Heron's representations to plaintiff were confined to American, and plaintiff's original letter submitting his bid of $268,783 tends to confirm this fact. While American's answer was filed on November 2, 1954, approximately 20 days after process was served, thereafter followed a series of motions pursuant to Rule 34 of the Federal Rules of Civil Procedure, 28 U.S.C.A., interrogatories, objections to motions, etc. It will be noted that, in an affidavit filed by Heron on December 9, 1954, it was represented by Heron that he was employed by American and no mention is made of New Hampshire. On July 11, 1955, the discovery deposition of Heron was taken and then, for the first time, the error with respect to the names of the companies came to light. Under the facts as stated and, in the interest of justice the plaintiff will be granted the right to file his amended complaint. Certainly none of the defendants are prejudiced thereby, assuming, of course, the statute of limitations has not run.

This brings us to a consideration of the statute of limitations. Sec. 8–24 of the Code of Virginia 1950, as amended, provides for a five year limitation as to those personal actions which would survive and a one year limitation for such personal actions which would not survive. Sec. 64–135 of the Code of Virginia 1950, as amended, reads:

"An action of trespass, or trespass on the case may be maintained by or against a personal representative for the taking or carrying away any goods or for the waste or destruction of, or damage to, any estate of or by his decedent".

Thus we are faced with the inquiry as to whether an action for alleged wrongful interference with the right to enter into a contract will survive. If plaintiff should die, could his estate institute such an action? In the opinion of this Court this question must be answered in the affirmative. In Barnes Coal Corporation v. Retail Coal Merchants Ass'n, 4 Cir., 128 F.2d 645, 649, the Court, in an opinion by Judge Parker, said:

"Underlying the distinction between actions that die with the person and those that survive is the basic thought that the reason for redressing purely personal wrongs ceases to exist either when the person injured cannot be benefited by a recovery or the person inflicting the injury cannot be punished, whereas, since the property or estate of the injured person passes to his personal representatives, a cause of action for injury done to these can achieve its purpose as well after the death of the owner as before. This rule that the cause of action for injury to property or estate survives is in accord with the rule in equity, where proceedings relate primarily to the protection of property rights".

The reasoning of Judge Parker in the above cited case was expressly approved by the Supreme Court of Appeals of Virginia in Westover Court Corporation v. Eley, 185 Va. 718, 40 S.E.2d 177.

Many authorities hold that the right to enter into a contract is a "property right". Defendant concedes that there are "property rights" in an executed contract, but insist that an unexecuted contract falls in another class. The Court's attention is directed to Mumpower v. City of Bristol, 94 Va. 737, 27 S.E. 581, but this case is classified by Judge Parker in Barnes Coal Corporation v. Retail Coal Merchants Ass'n, su-

pra, as an action for malicious prosecution in which the damage to property was considered *not* as direct but as consequential upon the injury to the person. Cases supporting the theory contra to that advanced by defendant are Coleman v. Whisnant, 225 N.C. 494, 35 S.E.2d 647; Morris v. Holshouser, 220 N.C. 293, 17 S.E.2d 115, 137 A.L.R. 733; Lewis v. Bloede, 4 Cir., 202 F. 7.

For reasons hereinabove stated defendant's motion for summary judgment will be granted thus limiting the issue to one of alleged wrongful interference with the right of plaintiff to enter into a contract with the Navy, and plaintiff's motion to amend his complaint and to bring in New Hampshire and Heron as parties defendant will similarly be granted.